IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

———————

TOMAS HERNANDEZ,

    Plaintiff,

    v.                                                                                Civ. No. 11-822 BB/SMV

JACOB GRANT,
BRYAN KILLINGER, and
JOSEPH MANNARINO,

    Defendants.

**MEMORANDUM OPINION**

    THIS MATTER comes before the Court on Defendants' motion for summary judgment [Doc. 24]. Having reviewed the submissions of the parties and the relevant law, and for the reasons set forth below, this motion shall be GRANTED IN PART and DENIED IN PART.

**FACTUAL AND PROCEDURAL HISTORY**

    In May, 2011 Defendant Officer Mannarino was alone investigating a possible burglary at a home in northwest Albuquerque, when he believed he heard a suspect exit the house, followed by the sound of a car driving down the only nearby road. When Officer Mannarino saw the car, he thought it was similar to one described on the police radio a day earlier. Officer Mannarino also believed the car was driving suspiciously, although the driver, Plaintiff Hernandez, contests this assertion. Because Officer Mannarino believed Mr. Hernandez was driving a suspicious vehicle in a suspicious manner near the scene of a recent burglary, he called dispatch with a detailed description of Mr. Hernandez's car.

Dispatch did not investigate whether Mr. Hernandez's car matched the subject of any earlier radio calls or ongoing investigations. Dispatch found that Mr. Hernandez lived less than two blocks from the burglarized house. Nonetheless, dispatch issued a radio call that Mr. Hernandez was suspected of burglarizing the home, and said his vehicle was implicated in an earlier call.

Defendants Officer Grant and Officer Killinger responded to the call. They arrived at Mr. Hernandez's home in an unmarked police vehicle and wearing plain clothes. They waited in front of the house for approximately one hour while Mr. Hernandez was inside. When Mr. Hernandez began to leave his house, the officers did not identify themselves, but detained Mr. Hernandez at gunpoint using "felony stop" procedures. The officers handcuffed Mr. Hernandez for a further fifteen minutes while they interrogated him about the burglary. The interrogation continued until a police sergeant, who was friends with Mr. Hernandez, arrived at the scene, verified that Mr. Hernandez was not a burglar, and ordered his release.

Mr. Hernandez claims he suffered humiliation, fear, and emotional distress from his detention. He now brings this suit against Officers Mannarino, Grant, and Killinger, asserting excessive force and unreasonable search and seizure under the Fourth Amendment, and assault, battery, false arrest, and false imprisonment under New Mexico tort law.

## LEGAL STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting

Fed. R. Civ. P. 56(c)). In response to a motion for summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986). To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

The officers assert qualified immunity on their claims of excessive force and unreasonable seizure. A motion for summary judgment that asserts qualified immunity is reviewed differently from other summary judgment motions. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Qualified immunity provides an affirmative defense to government officials "for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1978)). However, qualified immunity will be denied if, taking the facts favorably to Mr. Hernandez, he shows the officers violated at least one of his federal rights, and this right was "clearly established" at the time of the alleged violation. *Saucier*, 533 U.S. at 201.[1]

---

[1] In *Pearson v. Callahan*, the Supreme Court overruled *Saucier* in part, holding that these two factors may be analyzed in either order. 555 U.S. 223, 225 (2009).

**DISCUSSION**

I.  **EXCESSIVE FORCE**

The Fourth Amendment prohibits officers from using excessive force when seizing an individual, and limits officers to an "objectively reasonable" amount of force.  *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005).  The excessive force inquiry is "separate and independent" from whether it was reasonable for the officers to execute an arrest in the first place.  *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007).  Thus Mr. Hernandez must show that regardless of whether his seizure was lawful, the officers used "more force than would have been reasonably necessary if the arrest or the detention were warranted."  *Id.* at 1126.

Courts determine whether force is unreasonably excessive by looking to the relevant factors, especially:  (1) the severity of the suspect's crime; (2) whether the suspect posed an immediate threat to safety of the officers and others; and (3) whether the suspect was actively resisting arrest.  490 U.S. at 396.  However, the inquiry does not lend itself to "mechanical application," and instead hinges on "the facts and circumstances of each particular case."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).

A.  Whether the Force Was Excessive

Mr. Hernandez alleges that when he attempted to drive out of his garage, an unmarked car came speeding across his driveway and blocked him from leaving.  Two men in plain clothes stepped out of the car and aimed their guns at his head from extremely close range.  The men, Officers Killinger and Grant, never identified themselves, but began issuing commands.  They ordered Mr. Hernandez to raise his hands, exit his car, face away from them, and kneel on the

ground.  Mr. Hernandez thought he was being car-jacked.  Mr. Hernandez complied with each command, demonstrating he was neither resistant nor a safety threat.

While the officers' conduct was perhaps less prudent than it could have been, the Fourth Amendment requires only "that an officer use reasonable, not optimal, force."  *Tanberg v. Sholtis*, 401 F.3d 1151, 1162 (10th Cir. 2005).  Mr. Hernandez was suspected of burglary, which is a serious crime that warrants an officer's concern and swift action.  Although Mr. Hernandez did not resist or threaten the officers, the officers only aimed their weapons at him, and used no other force.  Mr. Hernandez does not allege that the officers were especially violent or physically aggressive towards him, and he suffered no physical harm.  Simply applying some degree of force does not mean the force was excessive.  *Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").  Furthermore, the Constitution "does not require police to use the least intrusive means in the course of a detention, only reasonable ones."  *Marquez*, 399 F.3d at 1222.  Thus, the officers' force was not excessive under the Constitution.

B.  Whether the Officers Are Entitled to Qualified Immunity

Even if aiming a weapon at Mr. Hernandez at close range could be deemed excessive, such a rule was not clearly established for the purposes of qualified immunity.  Mr. Hernandez has submitted no authority indicating that police use excessive force simply by aiming their weapons at a suspected felon.  At the time of this detention, Tenth Circuit jurisprudence suggested the contrary.  *See Henry v. Storey,* 658 F.3d 1235, 1240-41 (10th Cir. 2011) (summarizing Tenth Circuit case law suggesting that aiming a weapon at a suspected felon is

constitutionally permissible); *cf., e.g., Holland v. Harrington*, 268 F.3d 1179, 1193 (10th Cir. 2001) (excessive for SWAT team to detain bystanding children at gunpoint for extended period of time).  The officers would not have been on notice that their conduct clearly violated the Constitution, and they are entitled to qualified immunity on the excessive-force claim.

## II.  UNREASONABLE SEIZURE

The Fourth Amendment protects the right of individuals to be free from unreasonable seizure and arrest.  U.S. CONST. AMEND. IV.  A Fourth Amendment seizure can take the form of a full custodial arrest, or an investigative detention (also called a Terry stop).  *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007).  Distinguishing a full custodial arrest from an investigative detention is not always clear.  *See Lundstrom v. Romero*, 616 F.3d 1108, 1120 (10th Cir. 2010) ("there is no litmus-paper test for determining when an investigative detention enters the realm of an arrest"); *Cortez*, 478 F.3d at 1115 ("These categories are not static and may escalate from one to another.").  As explained below, triable issues remain as to whether the seizure was an arrest, and if not, whether it was justified as an investigative detention.

A.  Whether The Seizure Was an Arrest or an Investigative Detention

Full custodial arrests, and detentions that resemble custodial arrests, must be supported by probable cause to be reasonable.  *United States v. Perdue*, 8 F.3d 1455, 1461 (10th Cir. 1993); *Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1028 (10th Cir. 1997).  Investigative detentions, however, are "so substantially less intrusive than arrests," that probable cause is not necessary.  *Dunaway v. New York*, 442 U.S. 200, 210 (1979).  The Supreme Court has commented that "[t]ypically this means that the officer may ask the detainee a moderate number

of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.  But the detainee is not obliged to respond.  And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released." *Berkemer v. McCarty*, 468 U.S. 420, 439-440 (1984).

The Tenth Circuit has further observed that "the use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest."  *Cortez*, 478 F.3d at 1115-1116.  An investigative detention becomes a full custodial arrest if it continues for an excessive time, is especially intrusive, or closely resembles a traditional arrest.  *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012); *see also Sisneros v. Fisher*, 685 F. Supp. 2d 1188, 1207 (D.N.M. 2010) ("it appears that, in the Tenth Circuit, there must be something more than the fact that the underlying crime was violent to justify officers' use of handcuffs and/or handguns during an investigative detention.  Without such additional justification, the guns and handcuffs transform that investigative detention into an arrest.").

In this case, the officers do not allege they had probable cause to arrest Mr. Hernandez.  Rather, they assert that probable cause was not necessary because Mr. Hernandez was only subjected to a brief investigative detention, which fell shy of a full arrest.  However, in *United States v. Melendez-Garcia*, the Tenth Circuit found that a seizure similar to the one in this case exceeded the scope of an investigative detention, and was an arrest requiring probable cause.  28 F.3d 1046, 1053 (10th Cir. 1994).  Displaying guns, using handcuffs, and executing "felony stop" procedures transformed an investigative detention into an arrest when the officers executed the stop in an open space during the day, had no tips or observations that the suspects were armed or violent, and the suspects had pulled their cars to a stop and stepped out of their cars in full compliance with police orders.  *Id.*

This is extremely similar to the case here.  The officers had no tips or observations that suggested Mr. Hernandez was resistant, a flight risk, violent, or armed.  Yet the officers blocked Mr. Hernandez into his driveway, and using felony stop procedures, removed him from his car at gunpoint, made him exit his car and kneel on the ground, handcuffed him, detained him for twenty minutes, and interrogated him with multiple officers.  When Mr. Hernandez's responses failed to generate probable cause of his guilt, he was not released, and the officers attempted to pressure a confession from him.  Mr. Hernandez remained handcuffed until one of his friends on the police squad arrived and vouched for his character.

Reasonable minds could conclude that, as in *Melendez-Garcia*, this seizure was sufficiently forceful, intrusive, lengthy, and coercive to constitute an arrest.  If Mr. Hernandez was subjected to a custodial arrest, then the officers will be liable for arresting him without probable cause.  Because triable issues remain as to the degree of Mr. Hernandez's seizure, this matter should be submitted to a jury for resolution.

B.  Whether the Seizure Was Supported by a Reasonable Suspicion of Criminal Activity

An investigative detention must be "justified at its inception" by a reasonable suspicion of criminal activity, and it must be "reasonably related in scope to the circumstances which justified the [detention] in the first place." *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *Gallegos*, 114 F.3d at 1028.  To determine if reasonable suspicion exists, courts look to the "totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Here, the officers assert they had reason to suspect Mr. Hernandez because he was driving a suspicious vehicle in a suspicious manner near the time and place of the burglary.  First, Mr.

8

Hernandez denies driving suspiciously.  He instead claims that he was driving in his neighborhood at 20 miles per hour, reduced his speed to 15 miles per hour when he saw Officer Mannarino's police car, and continued straight home.  Taking the facts favorably to Mr. Hernandez, there is nothing suspicious about driving the speed limit, especially in the presence of police officers.  Officer Mannarino acknowledges that civilians often slow down for innocuous reasons when they see police vehicles [Doc. 28-3, Mannarino Depo. 25:2-18].  Furthermore, while Officer Mannarino claimed that part of Mr. Hernandez's suspicious driving included "creeping along" at about 25 miles per hour, he also claimed that he believed the local speed limit to be about 25 miles per hour [id. at 20:8-9; 40:25-41:1].  Altogether, accepting Mr. Hernandez's version of the facts as true, he was not driving in a suspicious manner.

The officers also found suspicious Mr. Hernandez's proximity in time and place to the burglary.  However, the burglary took place a block-and-half away from Mr. Hernandez's home.  The officers had ample opportunity to realize this:  the officers knew the address of both the burglarized home and Mr. Hernandez's home, and Officers Grant and Killinger waited in a police car outside Mr. Hernandez's home for an hour.  Likewise, the officers should have understood that Mr. Hernandez's location in his own neighborhood was a far cry from 'reasonably suspicious.'

The officers lastly assert that "a little piece" of their reasonable suspicion was the similarity between Mr. Hernandez's car and one that had been described as a suspected vehicle the day before [Doc. 28-3, Mannarino Depo. 39:15-17].  Officer Mannarino believed that Mr. Hernandez's car was the aforementioned suspected vehicle because it was red and it had a California license plate in front, with a New Mexico plate in back.  However, Officer Mannarino could not remember further details of the suspected vehicle, such as what type of crime it was

9

connected with, where it had been seen, or its license plate number.  Neither dispatch nor the other officers followed up on this information to verify whether Mr. Hernandez's car matched the suspected vehicle.  Again, the officers had ample opportunity to do so during the hour they waited outside Mr. Hernandez's house.  Police officers are obligated to pursue "reasonable avenues of investigation" to corroborate inadequate leads.  *Cortez*, 478 F.3d at 1117.  Thus, Mr. Hernandez's car contributes virtually nothing to a reasonable suspicion of guilt.

Viewing the totality of these circumstances in Mr. Hernandez's favor, Mr. Hernandez was deemed suspicious because he drove by the scene of a burglary, which was extremely close to his own home, and reduced his speed when he saw a police car.  Mr. Hernandez then proceed straight home in a car that may or may not have been a suspected vehicle.  This is not a reasonable suspicion that Mr. Hernandez burgled a neighboring house, and there is a genuine issue of fact as to whether he was unlawfully detained.

C.  Whether The Officers Are Entitled to Qualified Immunity

Even if the officers unlawfully detained Mr. Hernandez, they will be entitled to qualified immunity unless it was clear that they violated federal law.  *See Morris*, 672 F.3d at 1194.  The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Id.* at 1196.  Taking the facts favorably to Mr. Hernandez, a reasonable officer would be on clear notice that seizing Mr. Hernandez from his car at gunpoint, making him get to the ground, detaining him in handcuffs for fifteen minutes, and attempting to pressure a confession from him amounts to a custodial arrest beyond the scope of an investigative detention.  It is also clearly not reasonable to suspect that Mr. Hernandez burgled his neighbor's house almost exclusively because he passed by it en route to his own home less

than two blocks away. Therefore, the officers will be denied qualified immunity on the unreasonable seizure claim, and summary judgment is not appropriate.

### III. UNREASONABLE SEARCH

On the claim of unreasonable search, the officers primarily argue[2] that Mr. Hernandez's complaint fails to properly assert his claim. *See* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). Construing this argument as a motion to dismiss, the governing Rule is Fed. R. 12(b)(6), dismissal for failure to state a claim upon which relief can be granted.

To survive a motion to dismiss, a complaint must go beyond a "formulaic recitation of the elements of a cause of action," or generalized allegations of conduct that could only conceivably give rise to a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009). Thus the complaint must contain "sufficient factual matter to show relief that is plausible." *Id.* However, the complaint need not contain a "detailed factual allegation." *Id.* Rather, the complaint must suffice to demonstrate that it has a "reasonable prospect of success," and it must "inform the defendants of the actual grounds of the claim against them." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1248 (10th Cir. 2008). In reviewing a motion to dismiss, the Court must accept all well-plead allegations in the complaint as true and view those allegations in the light most

---

[2] The officers also briefly assert, without citing any legal authority, that Mr. Hernandez had no reasonable expectation of privacy when his person was searched and seized from the driveway of his house. However, the Fourth Amendment protects "[t]he right of the people to be secure in their persons [and] houses . . . against unreasonable searches and seizures." U.S. CONST. AMEND. IV.

favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001)

Here, dismissal is not warranted under Rule 12(b)(6). Mr. Hernandez sufficiently states his claim and precisely ties it to the case at hand. Mr. Hernandez chronicled the events of his detention, including the "felony stop procedures" that involve searching a suspect incident to his detention. Mr. Hernandez then distinctly states that "Defendant Grant and/or Defendant Killinger did not have reasonable suspicion or probable cause to search Plaintiff" [Doc. 1-1, Compl. ¶ 65]. This makes it quite clear that Mr. Hernandez is claiming he was searched by the officers incident to his detention.

Even if Mr. Hernandez's wording could be more explicit, mere semantics are not proper grounds to dismiss an otherwise viable claim. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome." *Foman v. Davis*, 371 U.S. 178, 181-82 (1962) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). Moreover, Plaintiff further clarifies his allegations in his response to the officers' motion for summary judgment.[3] Likewise, the officers can claim no prejudice at having to prepare a defense under this legal theory. *See Foman*, 371 U.S. at 181-82 ("The Rules themselves provide that they are to be construed 'to secure the just, speedy, and inexpensive determination of every action.'") (quoting Fed. R. Civ. P. 1).

The summary judgment standard also does not warrant dismissal of this claim. Summary judgment is only appropriate after the moving party demonstrates that he is entitled to judgment

---

[3] To the extent the complaint might be insufficient, the Court will treat Plaintiff's response to the motion for summary judgment as a request to amend the complaint, and grant it. *See Viernow v. Euripides Dev. Corp.,* 157 F.3d 785, 790 n. 9 (10th Cir. 1998).

because there is no genuine triable issue as to any material fact.  Fed. R. Civ. P 56; *Security Nat'l Bank v. Belleville Livestock Com.*, 619 F.2d 840, 848 (10th Cir. 1979).  Only then does the burden shift to the non-moving party to show that genuine issues remain for trial.  *Id.*  Here, the officers have not met their burden of showing they are entitled to judgment.  They never deny searching Mr. Hernandez, nor submit any evidence to suggest that a search did not take place.  The officers certainly had the opportunity to investigate the facts and supply the Court with relevant evidence – indeed, no one is in a better position than the officers themselves to know whether Mr. Hernandez was searched, who searched him, and on what grounds.  Rather, the officers simply chose not to submit any evidence on their behalf, and faulted the plaintiff for doing the same.  This is insufficient to be awarded summary judgment.  *See id.*  Without any evidence on this claim, factual disputes remain as to whether Mr. Hernandez was searched and, if so, whether the search was lawful.  Likewise, this claim should be submitted to a jury.

## IV.  STATE TORT CLAIMS

Defendants move for summary judgment on Mr. Hernandez's claims of assault, battery, false arrest, and false imprisonment under New Mexico law.  Under the New Mexico Tort Claims Act, public employees who commit these torts are not shielded from liability.  NMSA 1978 § 41-4-12.  The officers' sole substantive defense is that because the seizure was reasonable under the Fourth Amendment, they have not committed any of the above torts.  They accurately assert that police officers do not commit assault, battery, false arrest, or false imprisonment *if* the arrests they execute are reasonable.  *Dickson v. City of Clovis*, 242 P.3d 398, 404 (N.M. App. 2010).  However, as discussed, a jury could find that the seizure here was unreasonable.  Likewise, a jury could find the officers liable on the state-tort claims.  *See, e.g., Fuerschbach v. Southwest*

*Airlines Co.*, 439 F.3d 1197, 120-1209 (10th Cir. 2006) (where claims of unreasonable seizure under the Fourth Amendment remained triable issues, so too did New Mexico claims of assault, battery, false arrest, and false imprisonment).

## CONCLUSION

Summary judgment is appropriate on Plaintiff's claim of excessive force. However, material factual disputes remain regarding the state tort claims and unreasonable search and seizure claims. Therefore, the officers' motion for summary judgment will be denied in part and granted in part.

Dated this 24th day of August, 2012.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE